Adolph E. JASTRAM, et al.

v.

PHILLIPS PETROLEUM
COMPANY, et al.

Civ. A. No. 92–0763.

United States District Court,
E.D. Louisiana.

Jan. 27, 1994.

**1140**

Charles B. Johnson, Coleman, Johnson & Artigues, New Orleans, LA, for Adolph E. Jastram.

Thomas A. Casey, Jr., Stan A. Millan, Jones, Walker, Waechter, Portevent, Carrere & Denegre, New Orleans, LA, for Southern Pacific Transp. Co.

Keith M. Borne and Frances S. Hays, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, LA, for PC, Ltd.

John P. Hammond and John Y. Pearce, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, LA, for Harrington Energy Corp. and Jimmie D. Harrington.

Charles D. Marshall, Jr. and David N. Schell, Jr., Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, LA, for Phillips Petroleum Co.

McNAMARA, District Judge.

Before the court are the following motions:

(1) Motion for Summary Judgment filed by Defendant PC, Ltd. ("PC");

(2) Motion for Summary Judgment filed by Defendant, Phillips Petroleum Company, adopting PC's Motion for Summary Judgment; and

(3) Motion for Summary Judgment filed by Defendants, Harrington Energy Corporation and Jimmie D. Harrington, also adopting PC's Motion for Summary Judgment.

Memoranda in opposition have been filed by Plaintiffs, Adolph E. Jastram, et al. The motions, set for hearing on Wednesday, January 19, 1994, are before the court on written briefs without oral argument. Having considered the memoranda of counsel and the applicable law, the court now rules.

■■■ The court finds that Defendants' Motions for Summary Judgment should be *granted* only to the extent that the court concludes, as a matter of law, Defendants are not liable under CERCLA for any costs incurred in responding to releases or threats of release of "pollutants or contaminants"[1] which are not defined by CERCLA as "hazardous substances."[2] Accordingly, the court

---

1. CERCLA defines "pollutant or contaminant" in § 9601(33) which states:

   The term "pollutant or contaminant" shall include, but not be limited to, any element, substance, compound, or mixture, including disease-causing agents, which after release into the environment and upon exposure, ingestion, inhalation, or assimilation into any organism, either directly from the environment or indirectly by ingestion through food chains, will or may reasonably be anticipated to cause death, disease, behavioral abnormalities, cancer, genetic mutation, physiological malfunctions (including malfunctions in reproduction) or physical deformations, in such organisms or their offspring; except that the term "pollutant or contaminant" shall not include petroleum, including crude oil or any fraction thereof which

   is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of paragraph (14) and shall not include natural gas, liquefied natural gas, or synthetic gas of pipeline quality (or mixtures of natural gas and such synthetic gas).

2. CERCLA defines "hazardous substance" in § 9601(14) which states:

   The term "hazardous substance" means (A) any substance designated pursuant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Act [42 U.S.C.A.

rejects Plaintiffs' argument that Defendants are liable for the clean-up of brine or salt water, which in the opinion of Plaintiffs' expert, Stephen E. Steimle, "constitutes a pollutant or contaminant [under the law]." (*See* Plaintiffs' Exhibit E, Steimle Report, p. 2).[3]

The court recognizes the following contrary position taken by the Environmental Protection Agency (EPA), as stated in Office of Solid Waste and Emergency Response (OSWER) Directive 9832.1 (1983), "EPA Memorandum on Cost Recovery Actions Under the Comprehensive Environmental Response, Compensation and Liability Act," *BNA Environment Reporter, Federal Laws,* 21:5531, n. 7 (1992):

> Section 104(a) of the Act [CERCLA § 9604] authorizes the President (or his designee) to take response action whenever there is a release or threat thereof of a hazardous substance, or whenever there is a release or substantial release of "any pollutant or contaminant which may present an imminent and substantial endangerment to the public health or welfare ..."
> However, Section 107 [CERCLA 9607] refers only to liability of owners, operators, transporters and generators for costs incurred in responding to releases or threats of releases of "hazardous substances". It is not clear whether those persons may also be responsible under § 107 for costs incurred in responding to releases or threats of releases of any pollutant or contaminant which is not defined as a hazardous substance, but which may present an imminent and substantial endangerment. The government intends to hold such persons liable for those costs under both section 107 of CERCLA and the common law of restitution.

(*See* Plaintiffs' Exhibit K at n. 7).

However, in light of the clear statutory language of CERCLA, the court refrains from legislating new liability provisions for private parties. CERCLA § 9607(a) imposes liability on private parties only when "hazardous substances" are involved. "Hazardous substances," as defined by § 9601(14),[4] do not include brine or salt water. If Congress wanted to include "pollutants or contaminants" in § 9607(a), it very well could have since in § 9604(a), Congress authorized the government, in certain circumstances to undertake removal or remedial actions in response to a release or threat of release of "pollutants or contaminants" as well as "hazardous substances."

■ Further, § 9602 allows the Administrator of the EPA to promulgate and revise regulations designating hazardous substances, "in addition to those referred to in section 9601(14) of this title, such elements, compounds, mixtures, solutions, and substances which, when released into the environment may present substantial danger to the public health or welfare or the environ-

---

§ 6921] (but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C.A. § 6901 et seq.] has been suspended by Act of Congress), (D) any toxic pollutant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act [42 U.S.C.A. § 7412], and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of title 15. The term does not include petroleum, including crude oil or any fraction thereof which is not listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural liquid gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas). (emphasis added)

**3.** It is undisputed that the water at issue contained abnormally high levels of chloride. It is also undisputed that chlorine in and of itself is not a hazardous substance as defined by CERCLA § 9601(14).

Defendants point out that some of the regulations issued pursuant to the environmental statutes referenced in CERCLA § 9601(14) list specific chloride-containing compounds which are considered hazardous substances. (*See* Defendants' Original Memorandum, pp. 10–11). However, Plaintiffs have produced no evidence which establishes that any of these listed chloride-containing compounds were present in the subject water. (*See* Defendants' Exhibit 9, Table 2.0 which lists the additional elements of calcium, magnesium and sodium as constituents of the subject water). Disposal of this water prevents further analysis. Thus, Plaintiffs also cannot prove that such water was a hazardous substance through commingling or otherwise.

**4.** *See* fn. 2, *supra.*

ment." Until the EPA does so, this court will not allow the EPA's memorandum quoted above to preempt the statutory language of CERCLA. If every court would be allowed to second-guess the statutory language of CERCLA, there would be no consistency in clean-ups. *See also, Apache Powder Co. v. United States,* 968 F.2d 66, 69 n. 3 (D.C.Cir. 1992) (nitrates are not a "hazardous substance" but "at most a 'pollutant or contaminant'" and CERCLA permits EPA recovery only for removal of hazardous substances).[5]

The court finds that the Motions for Summary Judgment should be *denied* in all other respects because:

■ (1) As a matter of law, the court concludes that the specific exception in CERCLA § 9601(14)(C) applies only to that subsection[6] and therefore the pit or production sludges at issue are subject to CERCLA liability as hazardous substances under other subsections of § 9601(14). *Compare, Louisiana–Pacific Corp. v. Asarco, Inc.,* 6 F.3d 1332, 1338 (9th Cir.1993) (same re slag); and *Eagle–Picher Indus., Inc. v. United States EPA,* 759 F.2d 922 (D.C.Cir.1985) (same re mining wastes and fly ash);

■ (2) Based on the reports and affidavits of the opposing experts, the court finds that there are genuine issues of material fact as to whether the lead levels rendered the pit or production sludges "hazardous substances" whether through mixture and commingling or otherwise;

■ (3) As a matter of law, Louisiana Statewide Order 29B is not the only trigger for CERCLA liability in this case as "the scope of remedial action may be established by any 'legally applicable or relevant and appropriate ... requirement'" ... including "'any standard, requirement, criteria, or limitation under any Federal environmental law' or any more stringent 'State environmental or facility siting law.'" *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 671 (5th Cir. 1989), *citing,* § 9621(d)(2)(A).

While rejecting the argument that CERCLA liability attaches upon the release of *any* quantity of a hazardous substance because "adherence to that view would permit CERCLA's reach to exceed its statutory purposes by holding parties liable who have not posed any threat to the public or the environment," the Fifth Circuit has explained:

> While not the exclusive means of justifying response costs, we hold that a plaintiff who has incurred response costs meets the liability requirement as a matter of law if it is shown that *any* release violates, or any threatened release is likely to violate, *any* applicable state or federal standard, including the most stringent.

*Amoco Oil Co.,* 889 F.2d at 670–71.

■ (4) As a matter of law, substantial compliance, rather than strict compliance, with the National Contingency Plan ("NCP") is to be applied to Plaintiff's clean-up actions.[7] The court adopts the analysis of the

---

5. Plaintiffs argue that the EPA's interpretation of CERCLA's liability scheme is entitled to deference, but final authority for statutory construction rests with the courts. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984); *Amoco Oil Co.,* 889 F.2d 664, 670 n. 11 (5th Cir.1989).

6. CERCLA § 9601(14)(C) defines hazardous substance as:

(C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Act [42 U.S.C.A. § 6921] *(but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C.A. § 6901 et seq.] has been suspended by Act of Congress).* (emphasis added)

7. Under § 9607, a private party's clean-up actions must be "consistent with the national con-

tingency plan" for purposes of CERCLA recovery actions.

The NCP, a series of regulations promulgated by the EPA at 40 C.F.R. 300.61 et seq., defines procedures and standards for waste site cleanups, and its purpose "is to give some consistency and cohesiveness to response planning and actions." H.R.Rep. No. 96–1016, Part I at 30, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Admin.News 6119, 6133.

The NCP was first issued in response to the mandate of the Clean Water Act, 33 U.S.C. § 1321(c)(2). In 1982, it was amended pursuant to Congress' mandate to include issues raised by CERCLA. Additional revisions became final on November 20, 1985. 50 Fed.Reg. 47912 et seq. (1985).

The 1985 NCP was superseded by a newer NCP in 1990. In the Summary of the 1990 NCP, the EPA stated:

court in *Con–Tech Sales Defined Benefit Trust v. Cockerham*, 1991 WL 209791 (E.D.Pa.1991) which found that:

> the substantial compliance standard [as set forth in the 1990 NCP] is meant to *clarify* the meaning of "consistent with the NCP," not to add a new provision. The "strict compliance" standard advocated by the defendants is a creation of the courts, not the EPA, and the agency has simply announced its disagreement with the courts' interpretation of section 107 of CERCLA and of the 1985 NCP.

(*See* Plaintiffs' Exhibit G, *Cockerham*, 1991 WL 209791 at \*5). *See also, Hatco Corp. v. W.R. Grace & Co.*, 801 F.Supp. 1309, 1332 (D.N.J.1992) (quoting same language); and *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898–99 (9th Cir.1986) (consistency with 1985 NCP did not require strict compliance with its provisions).

■ (5) Whether the costs incurred by Plaintiffs were in substantial compliance with the NCP and whether the plaintiffs' cleanup was a removal or remedial action are hotly disputed by the parties. Thus these issues cannot be resolved on motion for summary judgment.

Accordingly;

IT IS ORDERED that:

(1) All of Defendants' Motions for Summary Judgment be and are hereby GRANTED only to the extent that the court concludes as a matter of law that CERCLA imposes no liability for the recovery of costs incurred as a result of clean-up actions related to "contaminants or pollutants" (i.e., brine or salt water); and

(2) In all other respects, all of Defendants' Motions for Summary Judgment be and are hereby DENIED.

---

Today's revisions of the NCP are intended to implement regulatory changes necessitated by SARA, *as well as to clarify existing NCP language* and to reorganize the NCP to coincide more accurately with the sequence of response actions.

55 Fed.Reg. 8666, March 8, 1990 (emphasis added). One provision of the 1990 NCP provides:

A private party response action will be considered "consistent with the NCP" if the action, when evaluated as a whole, is in *substantial compliance* with the applicable requirements ... and results in a CERCLA quality cleanup. 40 C.F.R. § 300.700(c)(3)(i) (1990), 55 Fed.Reg. 8858, March 8, 1990 (emphasis added).